

Andrew E. Goddard / Sylvia Sinohui
1861 S. Haster St. #86
Anaheim, Ca. 92802
(714)718-8007
Andresgoddard0@gmail.com
In Pro Per

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

FEB 13 2025

CENTRAL DISTRICT OF CALIFORNIA
BY OYE                    DEPUTY

— IFP Submitted

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ORANGE

Andrew E. Goddard

Sylvia Sinohui

Plaintiff,

vs.

Mercy House Living Centers

The County of Orange

The City of Anaheim

Defendant(s)

1.) TITLE VI OF THE CIVIL RIGHTS ACT OF 1964
2.) THE REHABILITATION ACT OF 1973 SECTION 504
3.) THE FAIR HOUSING ACT - 42 USC SECTION 3604
4.) THE FAIR HOUSING ACT - 42 USC SECTION 3617
5.) INVASION OF PRIVACY (CAL. CONST. ART I
    AND COMMON LAW INTRUSION UPON SECLUSION
6.) RETALIATION (CAL GOV'T CODE 12955 et Sg.)
7.) BREACH OF IMPLIED WARRANTY OF HABITABILITY
8.) FAIR HOUSING ACT - 42 USC SECTION 3631
9.) COMMON LAW NEGLIGENCE FOR
    VIOLATIONS OF CAL. CIVIL CODE 1714

8:25-CV-00289-CBM-(JDEx)

DOCUMENT NAME (e.g., COMPLAINT FOR DAMAGES) - 1

## I. JURISDICTION

1. This court has jurisdiction under 28 U.S. Code29-California Southern Division.

## II. VENUE

2. Venue is proper in this court: the Defendants reside in, and the acts and omissions complained herein, Orange County. See Cal. Civ. Proc. Code 393(b),394,395(a)

## III. PARTIES

3.  Plaintiff Sylvia Sinohui is a 66-year-old female who suffers from Schizo-effectiveness, depression, and bi-polar. Plaintiff Sinohui was diagnosed with these disabilities a little before or a little 2after the year 2000. Plaintiff Sinohui has been a resident of Orange County (THE COUNTY) for 50 plus years, and a resident of The City of Anaheim (THE CITY) since the year 2014. Plaintiff Sinohui in the year 2014 was placed in The Permanent Supportive Housing Program, provided by Defendants Mercy House Living Centers and The City of Anaheim. 2

4. Plaintiff Andrew Goddard is a 56-year-old male who suffers from having his left leg amputated on July 29th 2023, due to the horrific conditions Plaintiffs had to live under at the Las Casitas Homes in the City of Anaheim. Plaintiff Goddard also was working able adult, professional truck driver, before being moved into the Las Casitas Homes property by Mercy House Living Centers. Plaintiff Goddard has resided in Orange County since 1977 and has been a resident in The City of Anaheim since 2015. Plaintiff Goddard was put in the Permanent Supportive Housing Program in the year 2015, provided by the Defendants Mercy House Living Centers and The City of Anaheim.

5. Defendant Mercy House Living Centers is a non-profit corporation that operates the homeless shelters in The County of Orange and houses clients in The Permanent Supportive Housing Program. It receives state and federal funding to operate these shelters and programs.

6. Defendant The County of Orange is a political subdivision of The State of California. It pays Defendants Mercy House Living Centers to operate some of the homeless shelters

and The Permanent Supportive Housing Program. It receives state and federal funding
to operate these shelters and programs.

7. Defendant The City of Anaheim is a California municipal corporation located within
Orange County. It pays Mercy House Living Centers to operate some of the shelters
located in the City of Anaheim and The Permanent Supportive Housing Program.

### IV. STATEMENT OF FACTS

8. What this case is about is **retaliating** against Plaintiff Goddard for speaking out
against the unlawful practices and the illegal activity of Defendant's Mercy House Living
Centers. Moving us into uninhabitable units. Each unit getting worse than the unit
before.

9. In 2019 Defendant Mercy House Living Centers put Plaintiff Sinohui and Plaintiff
Goddard into an apartment where they failed to disclose that somebody had died upon
moving in.

10. After asking Defendant Mercy House Living centers about it. Defendant Mercy
House called Anaheim P.D. and made-up false allegations that Plaintiff Sinohui was
walking around the complex with a knife in her hand yelling at other tenants.

11. Andrew went to the police station and obtained a report of the call. Which would
prove the alleged allegations to be false. When Anaheim P.D. showed up, the officers
found her sitting on the top of our steps next to our apartment smoking a cigarette.

12. Shortly after this incident Plaintiff Sinohui is served with a 3-day nuisance to quit.
Plaintiff Sinohui and Plaintiff Goddard were being retaliated against for speaking out
against the person dying in our apartment.

13. Receiving no help at all from Defendant Mercy House. Plaintiff Goddard is forced to
go to Fair Housing and seek a Reasonable Accommodation for Plaintiff Sinohui to Keep
her Permanent Supportive Housing.

14. June of 2019 Plaintiff Sinohui and Plaintiff Goddard are forced to sign an agreement
to move. If we did not sign the document. Plaintiff Sinohui would have been terminated
from the Permanent Supportive Housing Program.

15. June 9 2019 Plaintiff Sinohui and Plaintiff Goddard are moved to 403 N. Harbor Blvd. #2, located in the city of Anaheim. Plaintiff Goddard discovers that he is 1 of 4 confidential informants housed at this location. Andrew was purposely put at this location to be "taxed" by local AVLS gang members (Anaheim Vario Locos). AVLS gang is/are influenced by Mexican Mafia. Defendant Mercy House Living Centers and Defendant Mercy House Corporation are an Organized Crime Syndicate operation.

16. The first day Plaintiff Goddard and Plaintiff Sinohui move in. Defendant Mercy House case coordinator, Emily Cabrerra, states that this will be the last place that Defendant Mercy House will house you. Which Plaintiff Goddard and Plaintiff Sinohui thought to be a little out of line. Since Plaintiff Goddard and Plaintiff Sinohui were forced to move out at no fault of our own.

17. From the very first day of our move in. Plaintiffs had no working toilet and our kitchen sink backed up due to someone putting a shot glass down the garbage disposal.

18. Plaintiffs immediately told Defendant Mercy House about our plumbing issues. It took Defendants Mercy House 2 months before it was temporarily fixed.

19. October 11 2020 a lady Plaintiff Goddard only knows as Eleanor, was murdered in Apartment 5.

20. Eleanor was killed by Ronald "Scooter" Heatley from The Outlaw motorcycle club. Eleanor was killed for discovering the underground tunnels that lead into each of the 5 apartments from apartment 1, Linda Orielly's unit.

21. Plaintiff Goddard did his best to tell Defendants Anaheim Police Department and Defendant Mercy House. And nothing was done about it.

22. July 16 2021 Plaintiff Goddard writes and delivers a grievance letter to Defendant Mercy House describing the abuse, thieving, and the ongoing drug use and sales.

23. Also in the grievance letter was the issues describing why it would take months to fix our toilet and our kitchen sink. For the four years we lived at this residence. We never had consistent working plumbing.

24. Plaintiffs were forced to poop and pee in a Home Depot bucket at night. And at the end of our tenancy at this complex, we were having to let the kitchen sink water drain into a five-gallon bucket in our backyard.

25. The grievance letter also describes that our smoke/carbon dioxide detectors are going off all hours of the night.

26. And thru video that we have from a security camera inside of our apartment. Does Plaintiff Goddard discover that something is being blown into our apartment along with being spied on inside of our own apartment. Plaintiff Goddard also becomes aware of Linda Orielly recording Plaintiff Sinohui after Linda Orielly would agitate Plaintiff Sinohui

27. Also in the grievance letter, shows Plaintiff Goddard complaining about all my tools being stolen out of my truck. That parts on my F-150 truck were being stolen off my truck and replaced with bad parts.

28. Plaintiff Goddard discovers the AVLS gang members hanging around Linda Orielly's back gate and my truck. Andrew also discovers that Linda Orielly's boyfriend is from AVLS.

29. Andrew also discovers that Linda Orielly was placed at this property purposely by Defendant Mercy House Living Centers, to do harm not only to Andrew, but to the other confidential informants placed at this property as well.

30. April 5 2022, documentation will show acknowledgment by Defendants Mercy House of the overwhelming rats problem Plaintiff Goddard had been complaining about thru countless number of emails to Defendants Mercy House.

31. Video will show how overwhelming the rat problem was. Rats were jumping out of our cupboards. Rats were all thru our couches, our bed, clothes, cupboards, and shoes.

31. Rats chewed up all the wiring to our water heater, our gas lines in our stove, our living room heater, and the fan over the stove. In short, along with no constant working plumbing, we had no appliances to cook. Because the rats had destroyed everything in our home.

32. Plaintiffs would wake up daily having to clean up all the rat urine and poop left throughout our apartment. Vacuuming and mopping up all the destruction that rats left behind thru the night.

33.  June 2022. Defendants Mercy House gives Plaintiff Goddard personal information to a corrupt Anaheim Police Detective, Detective Aguilar, in Family Crimes.

34. To have false charges brought against Plaintiff Goddard for speaking out against the unlawful practices of Defendants Mercy House Living Centers, and for calling the police about the Illegal activity Defendants Mercy House Living Centers are involved in, not just at this property, but other Defendants Mercy House properties as well.

35. On July 15 2022 Plaintiff Goddard is arrested for battery he never committed, Case # 22NM07817. After i was released from jail. Andrew appeared before Judge Olga Giller and all charges were dropped, because there was no body cam of my arrest and my Google timeline proved that i was innocent. And the case was closed.

36. In June of 2023. Defendants Mercy House tries again to have Detective Aguilar bring false charges against me for battery for the second time. Detective Aguilar gave me a date of June 18th 2023 and my Google timeline proved my innocence for the second time.

37. April 4 2023 HUD Housing fails our unit after a Habitability inspection. Deemed our apartment uninhabitable. Due to all the damage the rats had done to our apartment, appliances, and cupboards. Along with the kitchen sink being drained into a five-gallon Home Depot bucket in the backyard.

38. Defendant Mercy House did nothing to try and correct the problems that failed our apartment. Mercy House tries to blame Plaintiffs for the issues.

39. July 26 2023 Plaintiff Goddard was admitted into UCI from a blister he got on the bottom of his foot after wearing his shoes for 20 minutes playing in the water with the next-door neighbor's daughter.

40. On July 29 2023 Plaintiff Goddard has his left leg amputated below the knee.

35. August 2 2023 Defendant Mercy House serves Plaintiffs a 3 day notice to quit. Stating that Plaintiffs were responsible for the unit failing the habitability inspection due to the rats.

41. August 5 2023 Plaintiff Goddard his released from UCI hospital from just having his left leg amputated below the knee.

42. And upon returning home Plaintiff Goddard is purposely squirted with water on his freshly amputated leg, getting the bandages wet, by Linda Orielly.

43. August 7 2023 Defendant Mercy House shows up at Plaintiffs apartment with a notice to vacate the property due to the property being sold. Which is a lie.

44. Plaintiff Goddard receives no handy-cap help in anyway. No ramp to get in and out of our apartment.

45. No handicap bars in the bathroom so I could get out of my chair to use the bathroom to take a shower. No handicap bars so I could take a shower.

46. Plaintiff Goddard is forced to seek a Civil Harassment Order against Linda Orielly. Case #30-2023-01342032. For coming at Plaintiffs on two different occasions with a knife stating she was going to kill us.

47. For coming at Plaintiffs with a hammer returning home in the carport.

48. Linda Orielly would also verbally attack Plaintiff Sinohui with racial slurs.

49. Calling her a spick and a wetback. Linda would tell Plaintiff Sinohui to "why don't you just go back to Mexico".

50. After having the Civil Harassment order approved on September 6 2023. 51. Plaintiff Goddard made at least over 20 calls to the police and made reports of Linda Orielly breaking the restraining order.

52. Andrew catching Linda stealing his wallet out of his car.

53. Andrews' home health nurse from UCI catches Linda and her sister Laura Orielly breaking into Andrew's car. Joanne, Andrews' home health nurse, catches the whole incident on video.

54. Andrew also catches Linda letting all the air out of his tires and calls 911.

55. On December 6 2023 Detective Aguilar from family crimes text Plaintiff Goddard. Saying that he sent all the video evidence and police reports of the battery incidents against Plaintiffs, the stealing of Plaintiff Goddards property, and all the violations of the restraining order to the City Attorneys' office.

56. Still to the date of this filing has the City Attorney been sent anything from Detective Aguilar with the incident's numbers of the calls. Corrupt Anaheim Police Officer.

57. Defendants Mercy House as well did not do anything to Linda Orielly. She received no violations for her misconduct from Defendants Mercy House. Linda still resides at this address.

58. August 7 2023 Plaintiffs are told by Defendants Mercy House that the people that own the property have sold it and we are being asked to move. Which was a lie.

59. The property owner never sold the property. And Linda Orielly is still a resident at this property, and Defendants Mercy House is starting to fill the vacant apartments again.

60. Defendants Mercy House did not ask or attempt to make Plaintiffs unit accessible for Plaintiff Goddard.

61. No grab bars for the bathroom area, no ramp to enter and exit the unit. Plaintiff Goddards wheelchair could not fit thru the bathroom door.

62. The new tenants are about to have the same thing happen to them. Same as the events i described above.

63. Wetzel V. Glen St. Andrew Living CMTY., LLC-901 F. 3d 856,859 7th Cir. 2018.

64. The Seventh Circuit Court of Appeals ruled that a landlord may be held liable under the Fair Housing Act. For failing to protect a tenant from known discriminatory harassment at the hands of another tenant.

65. A case brought before The Superior Court of The State of California County of Orange. Case #30-2020-01174005-CU-CK-CXC.

66. Describes the abuse in almost the same manner as described above. It also states that Mercy House Living Centers did nothing to correct any of the violations brought before them.

67. October 10 2023, 6 months after our apartment fails inspection, does Mercy House finally move Plaintiffs to 1861 S. Haster St. #86 in the City of Anaheim.

68. Plaintiffs were forced to sign the Reasonable Accommodation document or be terminated from the Permanent Supportive Housing Program

69. Defendants Mercy House put Plaintiffs in a unit not accessible for somebody in a wheel chair. No ramp to enter our front door.

70. Plaintiff Goddard cannot access the bedroom because my wheel chair does not fit thru the door way.

71. Plaintiff Goddard cannot enter make the turn to the bathroom without pinching his hand between the walls just to get to the door way of the bathroom.

72. Plaintiff Goddards wheelchair does even come close to fitting thru the doorway of the bathroom. Plaintiff Goddard must use the door knob to get up from the wheelchair. Since there were no bars put in place to assist me.

73. Plaintiff Goddard must hop on one leg to get to the toilet or to the bathtub. No bars of any sort were provided by Defendants Mercy House.

74. Defendants Mercy House do not have any units available for people who have physical Handicaps.

75. Plaintiffs have been housed in 7 different properties since being in The Permanent Supportive Housing program. Plaintiffs have never seen any units for handicap people at all.

76. Immediately after Plaintiffs move in, does Plaintiff Goddard notice his car being broken into along with his gas being taken.

77. Plaintiff Goddard files a police report, incident #24-6589, about the missing fuel and credit cards.

78. On August 10 2024 Plaintiff Goddard catches the white male stealing his gas and calls the Anaheim Police Department, incident #24-123588. They stated that they were on their way.

79. Plaintiff Goddard waits outside by my vehicle for the police to show. Plaintiff Goddard gets a text message saying that the case has been closed, without even arriving on scene and after i had made a previous police report.

80. Plaintiff Goddard feels like he is being targeted again by Defendants Mercy House and The Anaheim Police Department.

81. September 2024 Plaintiffs are told that the previous tenant, Lynda Lopez, died in our apartment. Plaintiffs are also told that the body was found in our apartment, after she had been dead anywhere from 5-7 days.

82. That would explain why Plaintiffs are getting weird rashes all over our bodies. And on 2 occasions have become very sick.

83. Defendants Mercy House were required to disclose that someone had died in our apartment before we moved in and did not.

84. August 21 2024 Rosie Yanez (Mel Alma Apartments manager) hands Plaintiff Goddard a document out of spite.

85. Rosie tells Plaintiff Goddard that the paper that she gave me is a receipt for monies paid from Defendants Mercy House, to have Rosie Look the other way when it comes to our apartment.

86. Thats why all our complaints go unheard and never get resolved.

87. October 2 2024 Plaintiff Goddard brings it to the attention of Defendants Mercy House, about the lady that died in our apartment. And that we had black mold in our apartment.

88. October 4 2024 Defendants Mercy House leaves a Work order on our door to enter on the 7th of October to fix the Black mold issue and to replace the carpet where the lady had died.

89. October 7 2024 Defendants Mercy House and the Regional Manager for the Mel Alma apartments show up to address the issues. Only the issue of the black mold was fixed by the onsite maintenance crew.

90. Mercy House tried hiding the issue of the death that occurred in our apartment. Not until Plaintiff Goddard brought it to the attention of the regional manager, did the regional manager know of the death.

91. October 10 2024 Defendants Mercy House acknowledge the death of Lynda Lopez dying in our apartment.

92. In a document that Plaintiffs sign on October 10 2024. Defendants Mercy House said that they would have our carpet replaced and our apartment cleaned after disturbing the removal of the carpet.

93. Still to this day of February 10 2025 the carpet still has not been replaced as promised. Or cleaned

94. The document of Defendants Mercy House, stated that our apartment was cleaned 3 months before our actual move in. So that means that they could have moved us out of the Previous apartment before I had my leg amputated and did not.

95. Plaintiffs emailed The Orange County Coroner's office to see if there was any record of anybody dying in our apartment at 1861 S. Haster St. #86 in the City of Anaheim and at 2375 W. Crescent #50 in the City of Anaheim.

96. The coroner's office returned my email with an answer of no. The coroner had no record of anybody dying in either apartment.

97. Defendants Mercy House are hiding the deaths that are occurring in their units.

98. January 10 2025 Defendants Mercy House leaves a workorder for the 14th of January to have the carpet replaced and our apartment cleaned.

99. January 13 2025 Plaintiff Goddard delivers a Litigation Hold letter to Defendant Mercy House. To save all communications in writing, electronically, emails, and especially the carpet in which the lady died on.

100. January 14 2025 Defendants Mercy House representatives Vanessa Najarro and a lady who would not give her name when asked by Plaintiffs, show up at our apartment and give Plaintiffs an excuse to not remove our carpet.

101. Defendants tell Plaintiffs that it was our responsibility to move the furniture out of the room with the carpet in it.

102. Plaintiffs did move as much as we could. Due to my disability i cannot put that much weight on my amputated leg.  Defendants Mercy House knew that.

103. January 22 2025 Adult Protection Services (APS) shows up at our door. The lady that accompanied Vanessa Najarro on the 14th of January, Annette, is the one who called and made false allegations to APS. That would be the 3rd time this lady has made false allegations to APS.

104. January 29 2025 Plaintiff Goddard observes Defendants Mercy House representatives Vanessa Najarro and a unknown white male trying to break in thru the gate that leads to Plaintiffs yard. Plaintiff Goddard discovers this returning home from the laundry room.

105. February 5 2025 Plaintiffs are forced to seek an Elder Abuse Restraining Orders to protect Plaintiffs from any further abuse. Case #30-2025-01457839.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

Title VI of The Civil Rights Act of 1964

**(Plaintiffs Andrew E. Goddard and Sylvia Sinohui against Defendants Mercy House Living Centers, The County of Orange, and The City of Anaheim)**

106. Title VI of the Civil Rights Act of 1964 provides that no person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance.

107. Denying a person an opportunity to participate in a program or activity

108. Restricting access to or enjoyment of housing, accommodations, facilities, services, financial aid, or other benefits

109. Utilizing criteria or other methods, or determining the site or location of housing, accommodations, or facilities in a way that has the effect of discriminating or impairing the purpose of the program

## SECOND CAUSE OF ACTION

The Rehabilitation Act of 1973 Section 504

**(Plaintiffs Andrew E. Goddard and Sylvia Sinohui against Defendants Mercy House Living Centers, The County of Orange, and The City of Anaheim)**

110. Section 504 forbids organizations and employers from excluding or denying individuals with disabilities an equal opportunity to receive program benefits and services. It defines the rights of individuals with disabilities to participate in, and have access to, program benefits and services.

111. Section 504 protects qualified individuals with disabilities. Under this law, individuals with disabilities are defined as persons with a physical or mental impairment which substantially limits one or more major life activities. People who have a history of, or who are regarded as having a physical or mental impairment that substantially limits one or more major life activities, are also covered. Major life activities include caring for one's self, walking, seeing, hearing, speaking, breathing, working, performing manual tasks, and learning. Some examples of impairments which may substantially limit major life activities, even with the help of medication or aids/devices, are: AIDS, alcoholism, blindness or visual impairment, cancer, deafness or hearing impairment, diabetes, drug addiction, heart disease, and mental illness.

112. Plaintiff Sinohui suffers from Bi-Polar, Depression, and Schizo-Effective. Plaintiff Sinohui was diagnosed with these disabilities some 30 years ago.

113. Plaintiff Goddard is a below the knee amputee. Plaintiff Goddard had his left leg below the knee amputated on July 29 2023.

## THIRD CAUSE OF ACTION

The Fair Housing Act-42 USC Sec. 3604. Discrimination in the sale or rental of housing and other prohibited practices.

**(Plaintiffs Andrew E. Goddard and Sylvia Sinohui against Defendants Mercy House Living Centers, The County of Orange, and The City of Anaheim)**

114. As made applicable by section 3603 of this title and except as exempted by sections 3603(b) and 3607 of this title, it shall be unlawful -

115. (a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

116. (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

117.(c) To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

118. Plaintiffs were handed documents stating that property had been sold. Which it had not.

119. Defendants Mercy House Living Centers even went to the extent of putting a for sale sign in the front yard of the 403 N. Harbor Blvd property.

120. (d) To represent to any person because of race, color, religion, sex, handicap, familial status, or national origin that any

dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available.

121. (f)(1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of -

122. (A) that buyer or renter.

123. (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or

124. (C) any person associated with that buyer or renter.

125. (2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of -

126. (A) that person; or

127. (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or

128. (C) any person associated with that person.

129. (3) For purposes of this subsection, discrimination includes -

130. (A) a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises except that, in the case of a rental, the landlord may where it is reasonable to do so condition permission for a modification on the renter agreeing to restore the interior of the premises to the condition that existed before the modification, reasonable wear and tear excepted.

131. (B) a refusal to make reasonable accommodations in rules,

policies, practices, or services, when such accommodations may be

necessary to afford such person equal opportunity to use and

enjoy a dwelling-.

132. (i) the public use and common use portions of such dwellings

are readily accessible to and usable by handicapped persons;

133. (ii) all the doors designed to allow passage into and within

all premises within such dwellings are sufficiently wide to

allow passage by handicapped persons in wheelchairs; and

128. (iii) all premises within such dwellings contain the

following features of adaptive design:

134. (I) an accessible route into and through the dwelling;

135. (III) reinforcements in bathroom walls to allow later

installation of grab bars; and

136. (IV) usable kitchens and bathrooms such that an individual

in a wheelchair can maneuver about the space.

137. Defendants Mercy House Living Centers never attempted to make any changes or

modifications to the units described above.

138. Even after my leg got amputated at the 403 N. Harbor Blvd. address.

139. The only thing Defendants Mercy House cared about is getting Plaintiffs away from

that unit in order not to get sued.

**FOURTH CAUSE OF ACTION**

The Fair Housing Act Title 42 USC sec. 3617. Interference, coercion, or intimidation.

**(Plaintiffs Andrew E. Goddard and Sylvia Sinohui against Defendants Mercy House**

**Living Centers, The County of Orange, and The City of Anaheim)**

140. It shall be unlawful to coerce, intimidate, threaten, or

interfere with any person in the exercise or enjoyment of, or on

account of his having exercised or enjoyed, or on account of his

having aided or encouraged any other person in the exercise or

enjoyment of, any right granted or protected by section 3603, 3604,
3605, or 3606 of this title.

141. The woman who accompanied Vanessa Najarro (Defendant Mercy House Solutions Manager) on January 14 2025 was brought to intimidate Plaintiffs.

142. The woman who accompanied Vanessa Najarro is the lady responsible for having false charges brought against Plaintiff Goddard.

143. By that woman showing up was basically telling Plaintiff Goddard, she was there to threaten my freedom.

144. That lady would be the one responsible for calling Adult Protection services for the 3rd time on Plaintiff Goddard. For speaking out against Defendants rules and procedures.

145. January 29 2025 Vanessa Najarro brings a white male to our unit and is caught trying to break into our unit.

## FIFTH CAUSE OF ACTION

Invasion of Privacy (Cal. Const. Art. I § 1 and Common Law)

**(Plaintiffs Andrew E. Goddard and Sylvia Sinohui against Defendants Mercy House Living Centers, The County of Orange, and The City of Anaheim)**

146. **Intrusion Upon Seclusion**: This occurs when someone intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or their private affairs. Unauthorized surveillance, wiretapping, or trespassing into someone's private space.

147. Plaintiffs have security footage of the unauthorized surveillance inside their unit.

148. Plaintiffs also have overwhelming amount of police reports and emails sent to Defendants Mercy House describing the violations of Intrusion upon Seclusion.

## SIXTH CAUSE OF ACTION

Retaliation (Cal. Gov't Code 12955 et seq.)

**(Plaintiffs Andrew E. Goddard and Sylvia Sinohui against Defendants Mercy House Living Centers, The County of Orange, and The City of Anaheim)**

149. Government Code § 12955(f) prohibits owners of housing accommodations from

harassing, evicting, or otherwise discriminating against any person to retaliate

150. against a person who has opposed practices unlawful under § 12955, informed law

enforcement agencies of practices believed unlawful under this section, has testified or

assisted in any proceeding under this part, or has aided or encouraged a person to exercise

or enjoy the rights secured by the statute.

151. Government Code § 12955.7 makes it unlawful to coerce, intimidate, threaten,

or interfere with any person in the exercise or enjoyment of, or on account of that person

having exercised or enjoyed, or on account of that person having aided or encouraged any

other person in the exercise or enjoyment of, any right granted or protected by Cal.
Gov't Gov. Code § 12955.

152. This is what this case is about. Plaintiffs have been retaliated against for speaking

out about the unlawful practices and the illegal activity Mercy House Living Centers is

involved in. Including murder.

### SEVENTH CAUSE OF ACTION

Breach of Implied Warranty of Habitability

**(Plaintiffs Andrew E. Goddard and Sylvia Sinohui against Defendants Mercy House
Living Centers, The County of Orange, and The City of Anaheim)**

153. Defendants have statutory and common-law duties to ensure that their facilities

are sanitary and fit for human habitation. See, e.g., Cal. Civ. Code § 1941; Cal.

Health & Safety Code § 17920.3; Cal. Code Regs. tit. 25, §§ 34, 7959(f), 8417; Orange

County, Cal., Municipal Code § 7-9-148.8. (d)(7) (2013) (In effect during relevant time

period) and Anaheim, Cal., Municipal Code §§ 18.38.125.0404-0405; 18.38.125.1101-
1102

(2012) (In effect during relevant time). These duties run both to the residents of

these facilities but also to the government agencies that finance them and, ultimately, to

the people and to the taxpayers.

154. Plaintiffs are the intended third-party beneficiaries of the contracts between Plaintiffs and Defendants Mercy House Living Centers.

There was an implied-in-fact contract between Mercy House Living Centers and Plaintiffs Andrew E. Goddard and Sylvia Sinohui would agree to certain conditions in return for Mercy House Living Centers providing habitable shelter.

155. All Defendants knew or should have known about the substandard conditions Mercy House Living Centers was and are, forcing residents to live in.

156. Defendants have failed to comply with their duties under the law, resulting in the conditions described above. This failure has resulted in physical and mental injuries to plaintiffs Andrew E. Goddard and Sylvia Sinohui.

157. Defendants have failed to provide habitable units.

**EIGHTH CAUSE OF ACTION**

The Fair Housing Act Title 42 USC sec. 3631. Violations; penalties

**(Plaintiffs Andrew E. Goddard and Sylvia Sinohui against Defendants Mercy House Living Centers, The County of Orange, and The City of Anaheim)**

158. Whoever, whether acting under color of law, by force or threat of force willfully injuries, intimidates or interferes with, or attempts to injure, intimidate or interfere with -

159. (a) any person because of his race, color, religion, sex, handicap (as such term is defined in section 3602 of this title), familial status (as such term is defined in section 3602 of this title), or national origin and because he is or has been selling, purchasing, renting, financing, occupying, or contracting or

negotiating for the sale, purchase, rental, financing or

occupation of any dwelling, or applying for or participating in

any service, organization, or facility relating to the business

of selling or renting dwellings; or

160. (b) any person because he is or has been, or to

intimidate such person or any other person or any class of

persons from -

161. (1) participating, without discrimination on account of race,

color, religion, sex, handicap (as such term is defined in

section 3602 of this title), familial status (as such term is

defined in section 3602 of this title), or national origin, in

any of the activities, services, organizations, or facilities

described in subsection (a) of this section; or

162. (2) affording another person or class of persons opportunity

or protection so to participate; or

163. (c) any citizen because he is or has been, or to

discourage such citizen or any other citizen from lawfully aiding

or encouraging other persons to participate, without

discrimination on account of race, color, religion, sex, handicap

(as such term is defined in section 3602 of this title), familial

status (as such term is defined in section 3602 of this title),

or national origin, in any of the activities, services,

organizations or facilities described in subsection (a) of this

section, or participating lawfully in speech or peaceful assembly

opposing any denial of the opportunity to so participate -

164. shall be fined under title 18 or imprisoned not more than one year,

or both; and if bodily injury results from the acts committed in

violation of this section or if such acts include the use,

attempted use, or threatened use of a dangerous weapon, explosives,

or fire shall be fined under title 18 or imprisoned not more than

ten years, or both; and if death results from the acts committed in

violation of this section or if such acts include kidnapping or an

attempt to kidnap, aggravated sexual abuse or an attempt to commit

aggravated sexual abuse, or an attempt to kill, shall be fined

under title 18 or imprisoned for any term of years or for life, or

both.

## NINTH CAUSE OF ACTION

Common Law Negligence- For violations of California Civil Code 1714

**(Plaintiffs Andrew E. Goddard and Sylvia Sinohui against Defendants Mercy House Living Centers, The County of Orange, and The City of Anaheim)**

165. Defendants have statutory and common-law duties to maintain their facilities

166. so that they are sanitary and fit for human habitation, and to ensure that their employees

167. and contractors do not take actions that violate residents' rights.

## RELIEF REQUESTED

Therefore, Plaintiffs ask the Court for the following:

168. That the Court issue a declaration, a writ of mandate, and an injunction prohibiting Defendants from engaging in the unlawful conduct described above.

169. That the Court award damages and any applicable penalties for the acts described above, including punitive damages for $13,000,000.00.

170. That Plaintiffs be awarded attorneys' fees and costs under Civil Code § 51.9, Code of Civil Procedure § 1021.5, Government Code § 12965, and any other applicable law.

171. Such other and further relief as the Court deems proper and just.

1

## __DEMAND FOR JURY TRIAL__

2

3  Plaintiff hereby requests a jury trial on all issues raised in this complaint.

4

5  Dated: _2 · 13 · 25_

6  Sign: _(signature)_

7  Print Name: _ANDREW E. GODDARD_

8

9

10  4831-5981-9291, v. 1

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28